01

02

03

04

05          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
06                  AT SEATTLE

07  MARK M. RUFENER,                    )     CASE NO. C07-0068 RSL
                                        )
08          Plaintiff,                  )
                                        )
09      v.                              )     REPORT AND RECOMMENDATION
                                        )     RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,                  )     DISABILITY APPEAL
    Commissioner of Social Security,    )
11                                      )
          Defendant.                    )
12  _____ )

13          Plaintiff Mark M. Rufener proceeds through counsel in his appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an

16  Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record

17  (AR), and all memoranda of record, it is recommended that the decision be REMANDED for

18  further administrative proceedings consistent with this Report and Recommendation.

19                  **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1961. [1] He is a high school graduate and has vocational

21  _____

22          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 training as a travel agent.  Past work experience includes employment as a food products sales

02 representative, a driver for sales, and a sales clerk.  Since the alleged onset of disability, he has

03 sold nutritional supplements from his home.  Plaintiff protectively filed an application for SSI

04 benefits on June 18, 2002. His application was denied at the initial level and on reconsideration,

05 and he timely requested a hearing, which was held on January 31, 2005. (AR 628-84, 658A-B,

06 659A, 662A-K.)  A decision was issued on October 20, 2005 finding plaintiff not disabled. (AR

07 13-23.)

08       Plaintiff timely appealed to the Appeals Council.  After considering additional evidence,

09 the Appeals Council denied the request for review (AR 6-9), making the ALJ's decision the final

10 decision of the Commissioner.  Plaintiff timely appealed to this Court.

11 **JURISDICTION**

12       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13 **DISCUSSION**

14       The Commissioner follows a five-step sequential evaluation process for determining

15 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

16 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

17 engaged in substantial gainful activity (SGA) since his alleged onset date. His home business of

18 selling nutritional supplements was found to not meet SGA levels. At step two, it must be

19 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff to have

20 severe impairments consisting of retinal detachment of his right eye, bipolar disorder, and HIV.

21

22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ

02  found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.  If

03  a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

04  functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

05  inability to perform past relevant work.  The ALJ found plaintiff's vision problems did not cause

06  more than minimal limitations.  The ALJ found that plaintiff had the RFC to occasionally lift

07  twenty pounds, frequently lift  ten pounds, stand and/or walk for six hours in an eight-hour day,

08  sit for six hours in an eight hour day, and do unlimited pushing and pulling.  He could not climb

09  ladders, ropes or scaffolds and could occasionally balance and crouch.  He needed to avoid

10  concentrated exposure to extreme cold, extreme heat, and hazards.  He  could only work with

11  limited public interaction and could do three-step tasks.  With this functional capacity, the ALJ

12  concluded that plaintiff could not perform his past relevant work.  If a claimant demonstrates an

13  inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at

14  step five that the claimant retains the capacity to make an adjustment to work that exists in

15  significant levels in the national economy. The plaintiff was found able to perform a significant

16  range of light work, and was capable of making a vocational adjustment to other work existing

17  in significant numbers in the national economy, including the position of document preparer.

18      This Court's review of the ALJ's decision is limited to whether the decision is in

19  accordance with the law and the findings supported by substantial evidence in the record as a

20  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

21  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

22  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

02 decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

03 2002).

04       Plaintiff argues that the ALJ erred in failing to consider whether the combination of his

05 impairments met or equaled one of the Listing of Impairments at step three of the sequential

06 evaluation process.[2]  Plaintiff also contends that the ALJ improperly rejected his credibility, and

07 that the determination of his RFC was not based on substantial evidence.  Plaintiff further argues

08 that the ALJ posed an incomplete hypothetical to the vocational expert (VE).

09       The Commissioner argues that the ALJ properly assessed the evidence, set out clear and

10 convincing reasons in support of the finding relating to plaintiff's credibility, and propounded a

11 hypothetical to the VE that included all limitations the ALJ found supported by the record.  The

12 Commissioner also argues that any errors of law were harmless and that the decision should be

13 affirmed.

14       For the reasons described below, the undersigned concludes that the matter should be

15 remanded for further administrative proceedings.

16 <u>Listing of Impairments</u>

17       If a claimant has an impairment meeting the criteria in the "Listing of Impairments", 20

18 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, he or she will be found disabled without considering age,

19 education or work experience, as the listed impairments are considered severe enough to

20 presumptively prevent gainful activity.  20 C.F.R. § 416.920(d).  The regulations also provide that

21 _____

22      [2] In his reply, plaintiff withdrew his contention that the ALJ failed to consider any
limitation related to his right eye retinal detachment.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  if a claimant has a combination of impairments, no one of which meets a listed impairment, the

02  findings will be compared "with those for closely analogous listed impairments." 20 C.F.R. §

03  416.926(b)(1)(ii)(3). If the findings related to the impairments are "at least of equal medical

04  significance" to those of a listed impairment, the combination of impairments is considered

05  "medically equivalent" to that listing and the claimant will be found to be disabled. *Id*.

06       Plaintiff argues that, in considering whether he met a listing, the ALJ only considered his

07  HIV and bipolar disorder separately, rather than in combination. The Commissioner argues that

08  plaintiff did not present sufficient evidence to warrant a consideration of the combined effects of

09  his impairments.

10       In discussing plaintiff's impairments at step three of the sequential analysis, the ALJ set

11  forth the following analysis:

12       In the third step in the evaluation, the undersigned finds that the medical evidence
establishes that the claimant's impairments are not "severe" enough to meet or
13       medically equal, either singly or in combination, any of the impairments listed in 20
C.F.R. Appendix 1 to Subpart P of Part 404. Specifically, the undersigned has
14       considered listing 12.04, *affective disorders*. Claimant has some symptoms of this but
only has mild restriction of activities of daily living. He lives with a partner and
15       roommate who works outside the home. He maintains his own personal hygiene and
extensive medication regimen. He has accessed several social service programs which
16       assist him. He cares for himself and for animals. Claimant has only moderate
restrictions on his social functioning. He has friends and socializes, including
17       occasional outside activities. He emails and gets along well with his partner and
roommate. The record shows that he went out drinking, partying, and taking drugs
18       with his partner. Claimant has only moderate limits on his concentration, persistence,
and pace. The undersigned notes that claimant's description of his concentration has
19       varied throughout the record. On October 4, 2004, he reported that he had difficulty
concentrating and focusing. On January 12, 2004, claimant stated that his
20       concentration was not good, but noted that he maintained a GPA of 4.0. The
undersigned notes claimant's high grades and the fact that claimant attended school
21       full time at that point, and finds that claimant's concurrent claims regarding his
concentration, focus and persistence are not consistent. This negatively affects
22       claimant's credibility. The undersigned notes that claimant maintained a high GPA

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

throughout winter 2004 and also took classes in spring and summer 2004 but apparently did not complete the course requirements. The undersigned finds that claimant has not had any episodes of decompensation and does not satisfy the "C" criteria.

The undersigned has also considered listing 14.08, *HIV infection*. The medical expert testified that claimant does not meet or equal this listing. Although claimant complained of chronic fatigue, the record does not indicate what that is attributed to. The undersigned notes that when claimant was compliant with his HIV medications, he did well. The medical expert agreed with the state agency medical consultant's opinion that due to claimant's HIV, he could do light work. The medical expert questioned claimant's use of alternative treatments at Bastyr. The undersigned gives great weight to this opinion as it is consistent with the longitudinal record and because the medical expert had the chance to review the entire file. The undersigned finds that claimant's HIV does not meet or equal a listing.

Since claimant's impairments do not meet or equal the listings, the undersigned moves forward with the analysis. . . .

(AR 15; internal citations to record omitted.)

Plaintiff contends that the ALJ failed to conduct a legally sufficient step three analysis by only considering his two severe impairments standing alone, instead of focusing on the combined effect of the two impairments. Specifically, plaintiff argues that the combination of his multiple impairments adversely affect his concentration, persistence, and pace to a marked degree. ( *See* Dkt. 23 at 2.)

The Commissioner cites the case of *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), in which the Ninth Circuit Court of Appeals declined to find error in an ALJ's failure to compare the claimant's impairments in combination to a listing in an equivalency determination, because the claimant "did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment." Plaintiff contends the case is inapposite because he clearly raised the possible connection between his overall problems and his HIV and related medications.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01   If the combined effect of both a mental impairment (such as an affective disorder) and a

02   physical impairment result in limitations equal in severity to the listings, then a finding would be

03   required that the claimant's condition meets the severity of Listing 12.04 and he would be found

04   disabled. *Lester v. Chater*, 69 F.3d 1453, 1463 (9th Cir. 1995). "Equivalence is determined on

05   the basis of a comparison between the 'symptoms, signs and laboratory findings'" of the claimant's

06   impairments and the criteria set forth in the regulations for the listed impairment.   *Marcia v.*

07   *Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citing 20 C.F.R. § 404.1526).   In considering

08   whether the combination of impairments establishes equivalence, the ALJ must "adequately

09   explain" his or her evaluation of "the combined effects of the impairments." *Id.*   An ALJ is not

10   required to state why a claimant has failed to satisfy every section of the listings, as long as the

11   ALJ adequately summarizes and evaluates the evidence.   *Gonzales v. Sullivan*, 914 F.2d 1197,

12   1200-01 (9th Cir. 1990).

13   The gravamen of plaintiff's assignment of error is that the ALJ should have considered the

14   fatigue and loss of concentration due to either his HIV medications or from the HIV disease itself

15   in analyzing the "B" criteria of the listing for Affective Disorders, particularly the effect on §12.04

16   (B)(3), difficulties in maintaining concentration, persistence or pace.   A review of the ALJ's

17   consideration of the B criteria for Affective Disorders, however, shows that, to the extent the ALJ

18   found it to be supported by the evidence, she considered the impact of fatigue and loss of

19   concentration without regard to the source of such difficulties.   The ALJ stated that she was

20   considering plaintiff's impairments both singly and in combination, discussed the evidence, and

21   then concluded that the impairments neither met nor equaled the listings.   Plaintiff fails to

22   demonstrate error with respect to the ALJ's step three consideration of whether his impairments

01 | met or equaled the criteria for any listed impairment.

02 |       Plaintiff also takes issue with the ALJ's consideration of the two other impairment-related

03 | functional limitations in the B criteria, "Activities of Daily Living" and "Social Functioning", 20

04 | C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (B)(1) and (2).  However, as plaintiff conceded at oral

05 | argument, the ALJ's consideration of his difficulties with fatigue and loss of concentration does

06 | not impact these two areas of impairment-related functional limitation. Rather, despite the lack of

07 | clear articulation of this contention in his briefing, plaintiff asserts the lack of substantial evidence

08 | for the ALJ's finding that his activities of daily living were only mildly restricted and his social

09 | functioning was only moderately restricted.  In particular, plaintiff argues that the bases cited by

10 | the ALJ for her findings are not found in the regulations.  Plaintiff's argument is non-availing.  The

11 | regulations include examples of activities that may be representative of limitations in activities of

12 | daily living and social functioning, but do not limit the ALJ to considering only those examples.

13 | *Id*. at § 12.00 (C)(1) and (2).  In discussing plaintiff's impairment-related functional limitations,

14 | the ALJ provided legally sufficient reasons for her findings, supported by examples in the record.

15 | <u>Plaintiff's Credibility and RFC</u>

16 |       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

17 | reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see*

18 | *also Thomas*, 278 F.3d at 958-59.  If the ALJ finds that the claimant's testimony as to the severity

19 | of his pain and impairments is unreliable, the ALJ must make a credibility determination with

20 | findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

21 | discredit the testimony.  *Thomas*, 278 F.3d at 958 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-

22 | 46 (9th Cir. 1991)).  The ALJ may consider "at least" the following factors in evaluating the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  claimant's credibility: his reputation for truthfulness; inconsistencies either in his testimony or

02  between his testimony and his activities; and testimony from physicians and third parties

03  concerning the nature, severity, and effect of the symptoms of which he complains.   *Id*. at 959

04  (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility

05  finding is supported by substantial evidence in the record, we may not engage in second-guessing."

06  *Id.* (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999)).

07      Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting

08  his testimony.  He also claims that the ALJ's determination of his RFC was not based on

09  substantial evidence because of this error in the assessment of his credibility.  He challenges the

10  ALJ's analysis of his daily activities, and also contends that the ALJ impermissibly considered

11  activities in which he engaged before applying for benefits.  Plaintiff contends that his utilization

12  of naturopathic physicians should not have been considered as a reflection on his credibility, and

13  disagrees with the ALJ's suggestion that he was exaggerating his symptoms for secondary gain.

14  The Commissioner avers that the ALJ considered relevant evidence and that the assessment of

15  plaintiff's credibility was supported by the record.

16      The ALJ discussed plaintiff's credibility in several contexts.   In considering plaintiff's

17  limitations on concentration in the context of the step three evaluation, the ALJ noted:

18      The undersigned notes that claimant's description of his concentration has
     varied throughout the record.  On October 4, 2004, he reported that he had difficulty
19      concentrating and focusing.  On January 12, 2004, claimant stated that his
     concentration was not good, but noted that he maintained a GPA of 4.0.  The
20      undersigned notes claimant's high grades and the fact that claimant attended school
     fulltime at that point, and finds that claimant's concurrent claims regarding his
21      concentration focus and persistence are not consistent.  This negatively affects
     claimant's credibility.  The undersigned notes that claimant maintained a high GPA
22      throughout winter 2004 and also took classes in spring and summer 2004 but

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01      apparently did not complete the course requirements. . . .

02   (AR 15; internal citations to record omitted.)  In assessing plaintiff's credibility and RFC, the ALJ

03   found:

04         . . . The undersigned finds that claimant's testimony is not consistently credible.  As
         noted, claimant reported his limitations inconsistently at times, sometimes giving
05         reports of severe limitations that did not correspond with his wide range of activities.
         The record shows that claimant is capable of a good range of activities of daily living.

06
         . . .
07
         On November 29, 2000, claimant admitted that he uses prescription drugs such as
08         Vicodin, Percocet and Valium to cope with his stress.  On January 24, 2002, claimant
         reported that he self-medicated with Percocet and Valium.  He admitted to binge
09         drinking.  He took a friend's Xanax.  The undersigned notes that claimant abused
         substances and used prescription drugs which he had not been prescribed; this
10         negatively affects his credibility.

11         Many notes in the record show that claimant participates in varied activities that are
         social in nature and require concentration, persistence, and pace.  On May 30, 2001,
12         claimant reported that he was increasingly motivated at work and had a new business
         partner.  On August 20, 2001, claimant reported that he was working, doing a lot of
13         projects, growing his business, and becoming a Reiki master.  On January 22, 2002,
         claimant reported that he visited Palm Springs to participate in a softball tournament.
14         On March 14, 2004, he reported that he managed more things in his life than the
         average person, which included a household with pets, a small business, a new
15         relationship and his personal needs.  On June 20, 2002, claimant reported that he had
         been playing softball.  Claimant regularly sought care from various practitioners,
16         including naturopaths in Seattle and an herbalist in San Diego.  On June 2, 2003,
         claimant reported that he co-managed his softball team.

17
         Some of the claimant's behavior indicates possible secondary gain.  On October 1,
18         2002, he saw Ms. Baldwin and was very agitated because DSHS cut off his benefits.
         He continued to be agitated even when they found out that he  was cut off because
19         he had failed to supply requested information.  He told Ms. Baldwin that his partner
         and he had purchased a home and he wanted his Section 8 voucher to cover part of
20         the cost.  He made threats over the telephone to the SCO worker.  The undersigned
         notes that claimant and his partner had the resources to buy a new house and car.

21
         . . .
22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01     Some of claimant's doctors noted problems with claimant's reliability in taking his
       prescribed medications.  On January 23, 2002, Dr. Bennett stated that claimant had
02     problems with taking his psychotropic medications at full recommended doses.  On
       July 15, 2002, Robert Coombs, M.D., stated that claimant's C4 count had decreased.
03     Claimant stated that he was unaware of any herbal medications or other alternative
       medicine therapies that would affect that.  However, on that same day, claimant saw
04     Ms. Baldwin, his case manager, and stated that his CD4 count may have dropped
       because he slipped on his naturopathic program.  This negatively affects claimant's
05     credibility.

06  (AR 16-18; internal citations to the record omitted.)  Later, in further discussing plaintiff's RFC,

07  the ALJ continued:

08     Lay evidence includes some questionnaires that claimant completed.  In July 2002,
       claimant stated that he experienced fatigue and could walk for one hour before he
09     needed to rest, stand for two hours, and sit for five hours.  He used to be able to
       alpine snow-ski but could no longer do that.  If he found a task mentally and
10     physically taxing, he needed to rest.  He groomed himself and cleaned his living area
       daily and weekly.  He did not require assistance with household chores.  He prepared
11     his own meals.  Lifelong AIDS Alliance provided him with prepared meals when he
       was too exhausted to make food. He could drive, and frequently left his home to visit
12     friends or relatives.  He sometimes had fevers, anxiety, diarrhea, persistent elevated
       temperature, swollen lymph nodes, depression, anxiety, comprehension/concentration
13     problems, and nervousness.  He had these less than daily.  He required rest periods
       during the day and experienced memory problems.  He used a Daytimer to manage
14     his time.  He did relaxation exercises when he had racing thoughts.  He shared
       housekeeping with his partner.  He handled his own finances.  He read books but
15     could only get through a chapter at a time.  He watched two hours of television per
       day.  The undersigned notes that these activities show the claimant has the ability to
16     concentrate and focus on activities.

17     The claimant went to movies, played softball, and was active in politics.  He met
       friends and went camping.  He stated that time spent on these activities varied
18     depending on seasons, time and money, but did not state that his impairments limited
       him in doing activities.  He stated he used to have problems dealing with people in
19     authority but that since he started his bipolar medications, he could effectively deal
       with people in authority.  Before he got sick, he could maintain a linear thinking
20     pattern better.  It was currently hard for him to focus, study, and follow through with
       tasks.

21
       The claimant's partner completed a questionnaire.  He stated the claimant had
22     scattered/muddled thinking, occasional depression, anxiety and "hyperbehavioral"

activity. The claimant changed topics frequently in conversations and his moods were unpredictable. The claimant participated well in conversations. He had friends and was social, yet sometimes became cautious and standoffish. The claimant took care of a dog and cat. The claimant sometimes participated well in activities outside the home and sometimes became moody, rude, opinionated, tactless, and paranoid.

A DSHS interviewer saw claimant on November 15, 2002, and noted that the claimant appeared very scattered and unorganized. He was difficult to direct in the interview as he rambled in a non-stop, non sequitur manner. The claimant complained of racing thoughts and daily panic attacks, and stated that he was "always in a fight just to meet my basic needs". The undersigned finds that this presentation seems very exaggerated given claimant's better presentation at most of his other appointments and finds that the claimant could have exaggerated his symptoms for secondary gain. On November 4, 2002, during his psychiatric consult, the claimant stated he had high anxiety, recurrent brief manias and an [sic] normal mental status exam.

In February 2003, claimant completed a questionnaire with similar information to his questionnaire above. He stated that because of a great psychiatrist and "nearly ideal" medicine, he had the courage to attempt returning to college after being out of school for 20 years. He stated he was making progress in his life with fewer mistakes.

Claimant's friend completed a questionnaire. She stated that when claimant went off his medications his actions and decisions suffered, and that even when he was on his medication, he had issues. Claimant was highly distractable and could be obsessive about certain projects. She stated claimant got angry about rules and argued with officials. She was not sure but she thought claimant needed help with grooming.

The undersigned gives weight to the lay evidence to the extent it is consistent with the residual functional capacity. As described above, claimant's credibility is not generally good.

(AR 19-20.)

The ALJ noted that plaintiff improved when he was taking his medications, and had no side effects or symptoms such as mania or sleep disturbance. The ALJ gave "great weight" to the fact that plaintiff was stable while on his medication, and felt overwhelmed and stressed when he went off. (AR 16-17.)

Plaintiff argues that the ALJ's discussion of his activities is insufficiently general. However,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01   the ALJ discussed at length and in considerable detail claimant's daily activities, first as part of

02   the step three sequential analysis and then, with specific references to the record, while addressing

03   plaintiff's functional capacity. (AR 15.) The ALJ discussed questionnaires completed by plaintiff,

04   showing his activities of daily living and self-care activities, interaction with friends, social

05   activities, and other pursuits. (AR 16-19.)

06         Plaintiff contends that the ALJ considered in a negative light his utilization of naturopathic

07   physicians. A review of the decision, however, shows that the ALJ did not make such an

08   inference, but rather cited conflicting comments made by plaintiff to his medical doctor and his

09   case worker about his compliance with his naturopathic program and its impact on his D4 count.

10   In considering plaintiff's testimony, the ALJ may utilize "ordinary techniques of credibility

11   evaluation", such as prior inconsistent statements concerning the symptoms. *Smolen v. Chater*,

12   80 F.3d 1273, 1284 (9th Cir. 1996). In fact, the consistency of a claimant's statements, both

13   internally and with other information in the case record, is considered a "strong" indication of his

14   or her credibility. Social Security Ruling 96-7p (available at 1996 WL 374186 *5).

15         Plaintiff further disputes the ALJ's consideration of his conduct at a state agency interview

16   as evidence of possible secondary gain. (AR 18.) Plaintiff avers that there are no findings to

17   support this conclusion. However, the ALJ may make inferences reasonably drawn from the

18   record, and we must defer to that decision, even if the evidence supports another interpretation.

19   *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ cited not one, but two

20   interviews as suggestive of the conclusion that plaintiff could be exaggerating his symptoms for

21   secondary gain. (AR 19.) The ALJ could reasonably conclude that this was a motivational factor

22   in plaintiff seeking benefits.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01   Plaintiff also argues that the ALJ's assessment of his credibility relied impermissibly on

02 activities in which he engaged that pre-dated his application for disability benefits on June 18,

03 2002. Plaintiff correctly notes that the ALJ cited activities that occurred between the dates of May

04 30, 2001 and March 14, 2002 (AR 17), in addition to activities that post-date the application for

05 benefits. The Commissioner argues that plaintiff had applied for benefits on previous occasions,

06 and it was appropriate for the ALJ to consider activities prior to the most recent application date

07 in order to make a longitudinal assessment of plaintiff's impairments.

08   The ALJ's citation of pre-application activities did not include an explanation that the

09 activities were being considered for purposes of a "longitudinal assessment" of plaintiff's

10 impairments. This may have been appropriate, but the ALJ did not articulate this as a reason for

11 the consideration. However, in light of all the other reasons given by the ALJ for evaluating

12 plaintiff's credibility and making findings regarding his RFC, including the fact that all of these

13 activities continued after his disability application date (playing softball, running his business, doing

14 projects), there is substantial evidence to support the ALJ's ultimate conclusion.

15   Although plaintiff argues that some of the evidence was susceptible to a different

16 interpretation than that drawn by the ALJ, the reviewing court does not substitute its judgment

17 where the evidence may reasonably support more than one conclusion. *Verduzco v. Apfel*, 188

18 F.3d 1087, 1089 (9th Cir. 1999) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

19 The ALJ's findings regarding plaintiff's credibility and RFC are supported by substantial evidence

20 and should not be overturned.

21   <u>Hypothetical to VE</u>

22   At hearing, the ALJ posed separate hypotheticals to the VE with different variables. (AR

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  662G-I.)  In response, the VE testified that under the first hypothetical, plaintiff could perform his

02  past relevant work of driver/sales. (AR 662G-H.)  Under the second hypothetical, the VE testified

03  that plaintiff would be precluded from all work. (AR 662H.)  Considering the third hypothetical,

04  the VE testified that plaintiff would not be able to perform his past relevant work, but could

05  perform the job of document preparer or microfilming. (AR 662I.)  In the decision, the ALJ

06  adopted the RFC posed in the third hypothetical.  Plaintiff argues that the ALJ erred in not

07  adopting the second, more restrictive, hypothetical.

08          In a hypothetical posed to a VE, the ALJ must only include those limitations supported

09  by substantial evidence. *Ossenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).  An ALJ

10  is free to accept or reject restrictions in a hypothetical question that are not supported by

11  substantial evidence.  *Id.*  As discussed above, the ALJ's determination to not adopt more

12  stringent mental health restrictions, nor to find that plaintiff could not engage in concentrated work

13  behavior throughout an entire day, was supported by substantial evidence.

14          Plaintiff also contends that the ALJ erred in finding him capable of performing alternative

15  work because the hypothetical that established his capacity to perform this work presumed him

16  to be able to perform jobs requiring "a three-step task", which plaintiff avers is in contradiction

17  to the ALJ's finding that plaintiff was moderately restricted in concentration.

18          The Commissioner did not address this contention in his response brief (Dkt. 25), and

19  offered at oral argument to supplement the briefing.  However, the supplemental brief (Dkt. 32)

20  likewise did not directly address the contention, and the Court requested further briefing, to which

21  the parties responded (Dkts. 34 & 35).

22          The Commissioner contends that there is no rule that states that a person with "moderate"

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01   limitation in concentration can only perform tasks requiring fewer than three steps.   The

02   contention begs the issue. Although a particular finding may not be required or compelled, the

03   ALJ's decision must provide a sufficient basis for a reviewing court to consider the bases for those

04   findings that the ALJ does make.  The ALJ specifically included the ability to perform three-step

05   tasks in the hypothetical posed to the VE, and, without a showing to the contrary, this capacity

06   is presumptively material to the VE's opinion that plaintiff was capable of making a vocational

07   adjustment to other work.  The ALJ's step-five finding, in turn, was based on the VE's opinion.

08   However, the vocational significance of the ability or non-ability to perform three-step tasks was

09   not addressed by either the ALJ or the VE.  The terms are not defined or cross-referenced to a

10   particular regulation.  No medical expert, treating or non-treating, appears to have referenced the

11   terms.  Perhaps the ALJ and VE understood what was meant by the terms, but the lack of

12   explanation makes this portion of the decision unreviewable.

13          The issue is significant because plaintiff contends that the ability to perform three-step

14   tasks is inconsistent with the ALJ's finding that he was moderately restricted in his ability to

15   concentrate (*see* AR 15, 18).  The ALJ's findings must be sufficiently detailed "to permit courts

16   to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984)

17   (citing *Lewin v. Schwieker*, 654 F.3d 631, 634 (9th Cir. 1981)).  Here, the decision should be

18   remanded to allow the ALJ to address the effect of plaintiff's moderate restriction on the ability

19   to concentrate on his ability to perform three-step tasks.

20                                  **<u>CONCLUSION</u>**

21          This case should be remanded for further administrative proceedings.  On remand, the ALJ

22   should address plaintiff's ability to perform three-step tasks in light of the finding that he has

01 moderate restrictions on concentration, utilizing the services of a VE if necessary.

02      DATED this 26th day of November, 2007.

03

04                                              Mary Alice Theiler
                                                United States Magistrate Judge

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17